IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| POWERBLOCK HOLDINGS, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>IFIT, INC.,<br><br>          Defendant. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 1:22-cv-00132-JNP-CMR<br><br>District Judge Jill N. Parrish |

Plaintiff PowerBlock Holdings, Inc., through their Complaint, ECF No. 2 ("Complaint"), alleges that Defendant iFit, Inc. infringed Plaintiff's patent in violation of 35 U.S.C. § 271 *et seq*. and thereby committed an unfair and unlawful business act under UTAH CODE ANN. § 13-5a-101 *et seq*. Defendant has moved this court to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). *See* ECF No. 22 ("Motion"). For the reasons discussed below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

BACKGROUND

At issue in this case is U.S. Patent No. 7,578,771, ECF No. 2-2 ("'771 patent"), titled "Weight Selection and Adjustment System for Selectorized Dumbbells Including Motorized Selector Positioning." Complaint ¶ 17. The '771 patent relates to automated "selectorized dumbbells," *id*. ¶ 18, that is, adjustable dumbbells to which plates are affixed by operation of a motor while the dumbbells are in a resting position on a stand. The '771 patent is "generally

directed" to selectorized dumbbells. *Id.* ¶ 30. Plaintiff alleges that Defendant iFit manufactures and sells the NordicTrack iSelect Adjustable Dumbbell, and that such product infringes "at least" claim 20 of the '771 patent, *id.* ¶¶ 21-25, which requires "a handle; weight plates; an electric motor that causes the weight plates to be coupled to each end of the handle; and a data entry device to allow users to input a weight selection decision and control the motor." *Id.* ¶ 18.

Defendant, in turn, argues that the claims of the '771 patent are directed to subject matter that is ineligible for patent protection under 35 U.S.C. § 101. Motion at 1. Thus, whether Plaintiff has stated a claim upon which relief can be granted turns on whether the claims of the '771 patent, as a matter of law, are directed to patent-ineligible subject matter and, if so, whether they nonetheless supply an inventive concept that merits patent protection. The court concludes that claims 1-18 and claim 20 of the '771 patent are directed to patent-ineligible subject matter and fail to add significantly more; however, because claim 19 is subject to 35 U.S.C. § 112 ¶ 6, as discussed below, the court concludes that dismissal would be imprudent at this juncture, and Defendant's motion to dismiss Plaintiff's two claims for relief, both resting on a theory of patent infringement, is therefore **GRANTED IN PART AND DENIED IN PART**.

## LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citation omitted). The complaint must allege more than labels or legal conclusion and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hether a [patent] claim recites patent eligible subject matter is a question of law which may contain underlying facts," and patent eligibility may be resolved at the motion-to-dismiss stage. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020).

## DISCUSSION

Whether Plaintiff states a claim upon which relief can be granted in this case is a matter of whether the claims of the '771 patent are patent eligible under 35 U.S.C. § 101 as interpreted by the two-step test established by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Intl*, 573 U.S. 208 (2014). At *Alice* Step One, we must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 218. At *Alice* Step Two, we "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent eligible application." *Id*. at 217 (quotation omitted). The second step of the *Alice* test is satisfied when the claim limitations "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quotation omitted).

### I. *Alice* Step One

35 U.S.C. § 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of" Title 35 of the United States

Code. The Supreme Court has long held that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable" under § 101. Alice, 573 U.S. at 216 (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). Of these patent-ineligible categories, the boundaries of abstract ideas are of particular concern here, since Defendant argues that the '771 patent is directed to an abstract idea. Motion at 1.

### A. Relevant Federal Circuit Standards

The Supreme Court "has not established a definitive rule to determine what constitutes an abstract idea" for the purposes of *Alice* Step One, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (quotation omitted), but a corpus of controlling decisions by the United States Court of Appeals for the Federal Circuit, which has appellate jurisdiction over patent claims, 28 U.S.C. § 1295(a)(1), guides this court's inquiry. Among the most significant dimensions of abstraction that guides this court's analysis at *Alice* Step One is a line of cases that consider whether the claims in the patents at issue focus on a specific means or method that improves a relevant technology.

When reading a patent as a whole and in light of the written description, if the court concludes that a claim is directed towards an "improved . . . device," it must conclude that the claim is "not directed to a result or effect that itself is the abstract idea[.]" *CardioNet*, 955 F.3d at 1368. Thus, the court, at *Alice* Step One, searches for "specific means for technological improvements." *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 U.S. App. LEXIS 21842, at *13 (Fed. Cir. Aug. 21, 2023); *accord EcoServices, LLC v. Certified Aviation Serv., LLC*, 830 F. App'x 634, 642-43 & n.5 (Fed. Cir. 2020) (unpublished) (claims for systems for washing jet engines directed to "a specific combination of a type of washing unit, information detector, and control unit, configured in a certain way" provided technical improvements such as a higher degree

4

of quality of an engine washing procedure). If, on the other hand, such patents are instead determined to be directed to a broad result or effect of certain functions, the court must move on to *Alice* Step Two in search of an inventive concept. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, No. 2015-1570, 827 F.3d 1042, 2016 U.S. App. LEXIS 12352, 2016 WL 3606624, at *4 (Fed. Cir. July 5, 2016); *CardioNet*, 955 F.3d at 1368; *Enfish*, 822 F.3d at 1336.

This distinction turns in part on whether patents would claim "*how*" certain results are achieved with sufficient particularly, or whether they are formulated using outcome-oriented, functional terms. *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019); *accord Ficep Corp.*, 2023 U.S. App. LEXIS 21842, at *12-13. In making this distinction, the court looks to the language of the claims themselves. *Yanbin Yu v. Apple Inc.*, 1 F.4th 1040, 1043-44 (Fed. Cir. 2021).[1] "Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

Such an emphasis on specific means and processes, rather than general outcomes or effects, is deeply rooted in American patent jurisprudence, and stems from concerns over patents which,

---

[1] At *Alice* Step One, Federal Circuit precedent directs this court to "look[] at the focus of the claims, their character as a whole," *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (cleaned up); *accord Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (considering the "claims as a whole"); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020) (considering claims in their "entirety"). Elsewhere, the Federal Circuit has characterized "the heart of the claimed invention," *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017), in its Step One analysis to determine whether claims are directed to a patent-ineligible subject matter.

5

if enforced, might stifle innovation. *See Alice*, 573 U.S. at 223-24. "A patent is not good for an effect, or the result of a certain process" because such patents "would prohibit all other persons from making the same thing by any means whatsoever." *Le Roy v. Tatham*, 55 U.S. 156, 175 (1853); *McRO*, 837 F.3d at 1314; *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854) ("If this claim can be maintained, it matters not by what process or machinery the result is accomplished."). A patent may issue "for the means or method of producing a certain result, or effect, and not for the result or effect produced." *Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981). Such an emphasis on protecting processes and methods may be characterized as "the preoccupation of patent law with *means*." CHISUM ON PATENTS § 1.01 (emphasis in original).

The Federal Circuit has also developed a body of cases concerning the question of automation, which is at issue here. Where patent claims are directed toward automating previously manual activities, the claims at issue must "achieve a level of automation that provides an improvement over the prior art," *EcoServices*, 830 F. App'x at 642 (unpublished), and must describe a specific means, as discussed above, including by being "directed to a specific combination" or configuration of components "to create technical improvements." *Id*. That is, merely "eliminat[ing] human error by automating" processes is not the sort of improvement that makes claims patent-eligible under *Alice* Step One, and the improvements must come from the particular process or method identified in the patent claims rather than the mere fact of automation. *Ficep Corp.*, 2023 U.S. App. LEXIS 21842, at *14-15; *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) ("While the claimed system and method certainly purport to accelerate the process of analyzing audit log data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself."); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the

required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."); *accord Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 612; *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

The court notes that the gravamen of the Federal Circuit case law regarding automation under *Alice* Step One relates to data-processing and similar computational processes, which the Plaintiff characterizes as "pen and paper" processes. For example, both *Ficep Corp.*, 2023 U.S. App. LEXIS 21842, at *9, and *Univ of Fla.*, 916 F.3d at 1367, discuss this sort of process automation. *See also In re Killian*, 45 F.4th 1373, 1379 (Fed. Cir. 2022) ("Where the focus of the claimed advance over the prior art shows that the claim's character as a whole is directed to steps that can be performed in the human mind, or by a human using a pen and paper the claim is for a patent-ineligible abstract idea.") (cleaned up). But while such "pen and paper" or "pencil and paper" processes are a "telltale sign of abstraction," *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023), abstract ideas are not relegated merely to the realm of such data-processing and analytical processes. Indeed, "whether a device is a tangible system (in § 101 terms, a machine) is not dispositive." *Yu*, 1 F.4th at 1044 n.2 (cleaned up); *see also Alice*, 573 U.S. at 224; *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 611 ("[N]ot every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry."); *accord Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019) ("Without more, the mere physical nature of CGI's claim elements (e.g., controller, interface, and wireless data transmitter) is not

enough to save the claims from abstractness, where the claimed advance is directed to the wireless communication of status information using off-the-shelf technology for its intended purpose."); *contra* ECF No. 29 at 15.

### B. Whether Claim 20 is Representative

With this doctrinal foundation laid, the court moves to consider the claims of the '771 patent, including whether a representative claim may be selected from among the patent's twenty claims. Defendant argues that the '771 patent is directed to patent-ineligible subject matter because it claims "a simple combination of conventional, generic, off-the-shelf components that are merged to automate a practice that, for many years, has been performed manually" under the lines of Federal Circuit precedent discussed above. Motion at 7. Defendant further asserts that claim 20 is representative of the patent. ECF No. 30 at 10 n.7. Plaintiff argues, in turn, that claim 20 is not representative, ECF No. 29 at 23, because even though the Complaint points only to claim 20 in particular, Complaint ¶¶ 24, 25, 32 (stating that Defendant's product meets every limitation of at least independent claim 20), its action is facially pleaded under the '771 patent generally.

While Defendant argues that "[a]ny of the independent claims of the '771 patent could have been used as a representative claim given their similarities," ECF No. 30 at 10 n.7, Plaintiffs point out that independent claim 20 is unique in that it also requires a data entry device. ECF No. 29 at 7. Additionally, in their opposition memorandum, Plaintiff argues that claim 19, in particular, is sufficiently distinguishable from claim 20 because the former uses "means . . . for" language, which entitles it to a presumption of the operation of 35 U.S.C. § 112 ¶ 6.

Despite the parties' disagreement regarding claim representativeness, this court may select a representative claim to stand in the place of the patent generally. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1352

8

(Fed. Cir. 2016)) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."); *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016)*; E-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 574 (2020). And there is strong reason to believe that claim 20 should be treated as representative considering, for example, Plaintiff's decisions (a) to use claim 20 to characterize the '771 patent generally in the Complaint, *see* Complaint ¶ 18, *as well as* in their opposition memorandum, *see* ECF No. 29 at 11, (b) to point to claim 20 several times throughout the Complaint as the infringed claim, *see* Complaint ¶¶ 24, 25, 32, (c) to use claim 20 as the basis for its patent claim chart attached to the Complaint as Exhibit C, *see* ECF No. 2-4, and (d) generally to individually identify only claim 20 through the course of the entire Complaint. *See generally* Complaint.

However, this court ultimately concludes that claim 20 is not representative of the '771 patent insofar as claim 19's invocation of "means . . . for" language entitles it to the operation of 36 U.S.C. § 112 ¶ 6, which is applicable only to that claim.[2] Thus, in the following sections, the

---

[2] The presumption that § 112 ¶ 6 does not apply given the lack of "means" language is overcome only where "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc) (quoting *Watts v. XL Systems, Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). With this rule set forward in *Williamson* in mind, and given the general principle that "the use of the term means has come to be so closely associated with means-plus-function claiming that it is fair to say that the use of the term means (particularly as used in the phrase means for) generally invokes and that the use of a different formulation generally does not," *Personalized Media Communs., LLC v. ITC*, 161 F.3d 696, 703 (Fed. Cir. 1998) (cleaned up), this court declines to find that the presumption against applying 35 U.S.C. § 112 ¶ 6 has been overcome as to claims 1-18 and claim 20. Therefore, these claims will not be read as incorporating by reference the particular elements, structures, or processes described in the patent specification.

court first applies *Alice* Step One to claims 1-18 and claim 20 before moving on to consider claim 19.

### C. Whether Claims 1-18 and Claim 20 are Directed to Patent-Ineligible Subject Matter

On the substantive question of whether claims 1-18 and claim 20 are directed to a patent-ineligible abstract idea, Defendants argue that the patent claims are directed towards an end result (merely automating a process to achieve the desired end result of stacking plates on a dumbbell) rather than claiming a specific means or method that improves the relevant technology. Plaintiff, in response, characterizes the '771 patent as "directed to an improved weight selection and adjustment system rather than to an abstract result or effect," pointing to the language of that claim as reciting a specific means for improving the relevant technology and arguing that the specific combination of elements constitutes such a system. ECF No. 29 at 11 (citation omitted). The three elements to which Plaintiff points are:

> (a) a "dumbbell that provides an exercise weight that . . . is adjustable by coupling more or fewer weight plates" to each end of the dumbbell's handle;
> (b) an "electric motor that may be selectively energized . . . [to] cause a desired number of weight plates to be coupled to each end of the handle"; and
> (c) a "data entry device" through which a user can "input a weight selection decision that operatively controls the energization of the motor to adjust the exercise weight of the dumbbell . . . ."

*Id.* (quoting '771 patent at 14:35-57).

---

Additionally, the court understands Plaintiff to have conceded at oral argument, *see* ECF No. 34, that ¶ 6 is only properly applied to claim 19.

Plaintiffs also point to *EcoServices*, claiming that the '771 patent, like the patent in that case, claims a "specific system" or "specific solution for accomplishing" a technical goal, and is therefore directed to an "improved system." *Id*. at 12. Plaintiffs point out that the patent at issue in *EcoServices* also "included three structural elements," *id.* at 11, and also involved the automation of a process previously performed by humans. But this is where the meaningful parallels between the *EcoServices* patent and the '771 patent end. Unlike the patent at issue in *EcoServices*, claim 20 lacks sufficient specification of any truly "specific configuration[]," *EcoServices*, 830 Fed. App'x. at 638 (unpublished), and instead outlines only the conceivably necessary components for any automated weight-stacking mechanism.

Claim 20 is impermissibly broad and outcome-oriented in construction. The three structural components described in that claim consist merely of (a) "a dumbbell" which can be lifted, the weight of which "is adjustable"; (b) an "electric motor," which "will cause a desired number of weight plates to be coupled" to the dumbbell; and (c) "a data entry device" to allow a user to "control[]" the motor. ECF No. 29 at 11 (quoting '771 patent at 14:35-57) (emphasis added). The claim language here describes an end result—such as the *causing* of weights to be coupled—without recitation of specific means of doing so, unlike as in *EcoServices*. While the specification outlines much more detailed parts and processes, claim 20 itself does not require such elements (nor does it incorporate these elements by reference), but is instead much more broadly formulated. Thus, the '771 patent is much more analogous to the patent at issue in *Univ. of Fla*. than the one in *EcoServices* because the '771 patent's independent claims merely describe the general function of components (dumbbells providing exercise weights, motors that cause coupling, and data entry devices that allow users to input weight), rather than "*how*" the parts perform the functions claimed. *Univ. of Fla*., 916 F.3d at 1368; *accord In re TLI Commc'ns Patent Litig.*, 823 F.3d at 612

(finding a patent directed to patent-ineligible subject matter where it "fails to provide any technical details for the tangible components . . . instead predominantly describ[ing] the system and methods in purely functional terms.").

Further, the use of any electric motor to enable such coupling is insufficiently specific to constitute a "*specific* solution," *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019) (emphasis added); *McRO*, 837 F.3d at 1314, for accomplishing automated dumbbell weight stacking. In other words, no limitations in claim 20 "prevent preemption of all processes for achieving automated" weight stacking. *See McRO*, 837 F.3d at 1315.[3] Claim 20 would thus seem to cover all or substantially all systems for automated dumbbell plate stacking involving electric motors and data entry systems and is therefore overly broad.

Claim 1 is similarly directed to patent-ineligible subject matter for the reasons described above, and its exclusion of the data entry system is immaterial. Even putting the issue of claim 20's representativeness to the side, claims 1 and 20 both seek to claim systems comprising weight selection and adjustment systems consisting of the two or three "generic" components, *CardioNet*, 955 F.3d at 1368, rather than any particular system or method of selectorized weight stacking under the standards defined by the Federal Circuit. The so-called "specific combination," ECF No. 29 at 11, consisting merely of the two or three components is not a specific means of accomplishing the need identified in the written description, *McRO*, 837 F.3d at 1314, and is instead directed towards

---

[3] In fact, as Defendant notes, the '771 patent seeks to define the terms "motor" or "motorized" as applying to "any powered device that converts electrical energy into physical motion[.]" Motion at 11 (quoting '771 patent at 11:43-47).

the general end of automated weight stacking.[4] These claims offer no meaningful additional description of specific processes or *means* of accomplishing automated weight stacking and are thus directed to the patent-ineligible subject matter of the outcome of automating a process previously done manually—a "result" of a certain process rather than the means. *Diehr*, 450 U.S. 175, 182 n.7.[5]

Upon review of the claims dependent upon claim 1 (i.e., claims 2-18), the court concludes that, because claim 1 is directed to an abstract idea and implemented using generic components requiring performance of the same basic process, the same is true of each dependent claim. *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017); *Realtime Data LLC v. Array Networks Inc.*, 537 F. Supp. 3d 591, 610 (D. Del. 2021); *accord People.ai, Inc. v. Clari Inc.*, Nos. 2022-1364, 2022-1366, 2023 U.S. App. LEXIS 8294, at *47 (Fed. Cir. Apr. 7, 2023). The additional elements of, for example, buttons (dependent claim 3), a visual display (dependent claim 4), a stand (dependent claims 5 and 6), and so on, do not meaningfully affect this court's analysis of claim 1 under *Alice* Step One, nor do they "change[] the focus of the asserted claim[]." *See Trinity Info Media*, 72 F.4th at 1362.

---

[4] E.g., by use an electric motor "as a tool to automate conventional activity." *McRO*. 837 F.3d at 1314.

[5] Plaintiffs also take issue with what they see as insufficient deference paid to the '771 patent's written description and articulation of needs met by the patent. *See* ECF No. 29 at 13; *see also CardioNet*, 955 F.3d at 1371 ("[T]he district court erred by disregarding the written description's recitation of the advantages of the claimed invention."). But the benefits purportedly wrought by the '771 patent, including in its written description, *see* ECF No. 29 at 13, consist of little or nothing more than removing the possibility of human error, which the '771 patent would not do in any manner that comes from any particular process or method identified in the patent claims. *Ficep Corp.*, 2023 U.S. App. LEXIS 21842, at *14-15. In short, these claims resemble a generic automation patent, *see Credit Acceptance Corp.*, 859 F.3d at 1055, focusing on ease and removal of human error generally.

In sum, because the language of claims 1-18 and claim 20, read in light of the patent as a whole, is defined by the general outcome or effect of automated selectorized dumbbell weight stacking, those claims of the '771 patent give rise to a preemption problem under which the claims as written would ostensibly preempt any weight-selection and adjustment system. Thus, the court holds that claims 1-18 and claim 20 of the '771 patent are directed to patent-ineligible subject matter, and subsequently moves on to *Alice* Step Two in search of an inventive concept as to those claims.

### D.  Whether Claim 19 is Directed to Patent-Ineligible Subject Matter

As discussed above, claim 19 is not properly represented by claim 20, and its use of the terminology "means . . . for" presumptively requires construction of the claim limited to any specific corresponding structures described in the patent specification that perform the function identified in the claim. *See* 35 U.S.C. § 112 ¶ 6;[6] *Personalized Media*, 161 F.3d at 703-04; *York Prods., Inc. v. Central Tractor*, 99 F.3d 1568, 1574 (Fed. Cir. 1996) ("In determining whether to apply the statutory procedures of [§ 112, P 6], the use of the word 'means' triggers a presumption that the inventor used this term advisedly to invoke the statutory mandates for means-plus-function clauses."); *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259-60 (Fed. Cir. 2008) (holding that the presumption that § 112 applies may be overcome where the claim language specifies the exact structure that performs the function in question).

Where a claim invokes 35 U.S.C. § 112 ¶ 6, the court must first identify the claimed function and, second, determine whether sufficient structure is disclosed in the specification that

---

[6] Section 112, paragraph 6 provides that "an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112 ¶ 6 (1994).

14

corresponds to the claimed function. *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1367 (Fed. Cir. 2021). Such structures disclosed in the specification must be "clearly linked" to the claimed function, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003), meaning that the specification or prosecution history clearly links or associates that structure to the function recited in the claim. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997); *accord In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) ("If one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112."). "This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, [¶] 6." *B. Braun Med.*, 124 F.3d at 1424.

Claim 19, in relevant part, claims "means selectively actuable by the user for adjusting the exercise weight of each dumbbell without requiring the user to physically contact and move the selector himself or herself." *See* '771 patent at 14:29-32. Considering the two-step test laid out in *Dropbox*, 987 F.3d 1358, the function claimed here is dumbbell weight-adjustment not requiring physical contact by the user, while the structures described in the patent specification might include, for example, "selector 35" and the "front and back pin arrays 36f and 36b," and other components outlined, for example, at 6:31-56 of the '771 patent.[7] While the court declines to conclusively construct the claim terms at this juncture, the court posits that claim 19, by operation

---

[7] In any case, at this stage in the litigation it is not necessary to construct the precise boundaries of claim 19, which is better suited, for example, for a *Markman* hearing.

of 35 U.S.C. § 112 ¶ 6, plausibly identifies with sufficient particularity certain structures in the patent specification so as to be directed to a specific means of accomplishing a particular task, rather than the general, abstract outcome of an automated selectorized dumbbell. *See McRO*, 837 F.3d at 1314. In this way, claim 19 may not be subject to the abstraction that ails independent claims 1 and 20 and, as a result, dependent claims 2-18.[8] However, because the parties failed to meaningfully argue this issue, the court declines to offer a square holding on this issue.

Instead, Defendant's Motion is denied as to claim 19 of the '771 patent because Defendant failed to sufficiently distinguish claim 19 from claim 20, which it asserted was representative of the whole patent. District courts have previously denied motions to dismiss patent infringement claims because Defendants have similarly failed to address means-plus-function claims, instead claiming that non-means-plus-function claims are representative, and such dismissals have been affirmed by the Federal Circuit. *Uniloc USA, Inc. v. AVG Techs. USA, Inc.*, No. 2:16-CV-00393-RWS, 2017 WL 1154927, at *4, 2017 U.S. Dist. LEXIS 45125 (E.D. Tex. Mar. 28, 2017), *aff'd sub nom. Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890 (Fed. Cir. 2019). For this reason, the court concludes that granting Defendant's Motion is inappropriate as to claim 19 without more substantial party argument, and the *Alice* inquiry as to that claim ends here.

## II.  *Alice* Step Two (Claims 1-18, 20)

Because claims 1-18 and claim 20 are directed to patent-ineligible subject matter under *Alice* Step One, the court proceeds to *Alice* Step Two as to those claims. *Alice* Step Two "requires

---

[8] Admittedly, the court harbors some doubt that, even given the benefit of 35 U.S.C. § 112 ¶ 6, claim 19 is spared the doctrinal analysis set out in this order. However, without more meaningful briefing, the court declines to grant Defendant's Motion as to that claim, and reserves judgment on the issue.

[the court] to look with more specificity at what the claim elements add, in order to determine whether they identify an inventive concept in the application of the ineligible subject matter to which the claim is directed. Simply appending conventional steps, specified at a high level of generality, is not enough to supply an inventive concept." *Chamberlain Grp.*, 935 F.3d at 1348 (cleaned up). *Alice* Step Two is thus a search for "additional features" to ensure that "the claim is more than a drafting effort designed to monopolize the abstract idea." *Alice*, 573 U.S. at 221 (cleaned up).

While the written description of the '771 patent "touts the benefits of the patented selectorized dumbbell," ECF No. 29 at 13, the language of the patent itself recognizes that the better part of the claims of the '771 patent, ultimately, rests upon a straightforward assembly of generic machinery employed in their conventional use cases. As Defendant notes, the '771 patent itself acknowledges that *both* selectorized dumbbells generally *and* data-entry devices such as the one at issue in claim 20 were well-known at the time of the '771 patent's issuance. Motion at 3-5. Of course, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016), but such is not the case here. The dumbbell, motor, and user interface at issue in claims 1-18 and claim 20 are all used conventionally and in their generic, routine, and conventional use cases. *See Alice*, 573 U.S. at 225. Further, the function performed by each of the elements in dependent claims 2-18 is similarly "conventional" and lacks any indicium of inventiveness. *Id*. The claims of the '771 patent, then, would monopolize the abstract idea of automated selectorized dumbbells—stating the abstract idea of an automated selectorized dumbbell and essentially saying "apply it." *Id.* at 221.

Additionally, the benefits identified by claims 1-18 and claim 20 of the '771 patent are generally those conferred by the simple fact of automation and the removal of human operators rather than any benefit of the particular methods or processes identified in the patent. *See FairWarning*, 839 F.3d at 1095-97. Many precedential Federal Circuit opinions made clear that making existing processes more quick or accurate by means of a computer does not satisfy the "significantly more" Step Two analysis under *Alice*, 573 U.S. at 218, and this court concludes that, even absent a computer *per se*, automation of existing tasks through an electric motor that offers mere convenience or reduced error similarly does not add "significantly more" for much the same reasons. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015)*; OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). While Plaintiff rests on the fact the task automated under the '771 is "physical," ECF No. 29 at 22, the court finds the distinction unpersuasive given the thrust and rationale of the Federal Circuit as outlined in the above-cited cases.

Instead, at a high level, claims 1-18 and claim 20 of the '771 patent recite "generic, conventional elements" of dumbbells, motors, and data entry devices, *Ficep Corp.*, 2023 U.S. App. LEXIS 21842, at *15, merely automating conventional selectorized dumbbell functions and process. The generic motor-automated machine is not meaningfully different than the conventional one, and the court thus fails to find an inventive concept as to these claims. *Id*. Each component at issue in those claims, used in a conventional and generic way, is merely a "conduit for the abstract idea" of the *result* of an automated selectorized dumbbell. *In re TLI Communs. LLC Patent Litig.*, 823 F.3d at 612.

In conclusion, because the court holds that claims 1-18 and claim 20 of the '771 patent are directed to patent-ineligible subject matter, and because those claims do not add significantly more than the abstract idea of the end-result of an automated selectorized dumbbell, they fail the test established by the Supreme Court in *Alice*. But because claim 19, and the effects of the operation of 35 U.S.C. § 112 ¶ 6 in the *Alice* inquiry as to that claim, are not sufficiently argued, the court concludes that dismissal as to that claim would be inappropriate. On this ground, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART** as to Plaintiff's First Claim. Thus, Plaintiff's claim for patent infringement may proceed only as to claim 19 of the '771 patent. Additionally, insofar as the Motion is denied (that is, as to claim 19), it is denied without prejudice, and Defendant may renew its motion through future Rule 12 argument if it elects to do so.[9]

## III. Utah Unfair Competition Act

Plaintiff's Second Claim alleges that Defendant "has committed unlawful and unfair intentional business acts by knowingly and intentionally infringing the '771 patent," Complaint ¶ 44, thereby violating the Utah Unfair Competition Act, UTAH CODE ANN. § 13-5a-101 *et seq*. Section 13-5a-102(4)(a)(ii)(B) defines "unfair competition" to mean, in part, an intentional business act or practice that includes infringement of a patent. Because, by virtue of claim 19 of the '771 patent, Plaintiff has stated a claim upon which relief can be granted for patent infringement, the court concludes that Plaintiff has also stated a claim for which relief can be granted under the Utah Unfair Competition Act. Defendant's motion to dismiss the Second Claim,

---

[9] The court has elected to consider future Rule 12 motion practice directed to claim 19 as a result of the parties' general failure to meaningfully argue the significance of 35 U.S.C. § 112 ¶ 6 in the *Alice* inquiry as to claim 19, including with regard to which structures are incorporated by reference through the operation of that paragraph.

then, is **GRANTED IN PART AND DENIED IN PART** on the same grounds as under Claim One.

## CONCLUSION

For the foregoing reasons and subject to the considerations discussed above, Defendant's motion to dismiss, ECF No. 22, is hereby **GRANTED IN PART AND DENIED IN PART**.

DATED September 29, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge